Bruce F. Schlegel, Michael Handy, Fort Worth, Tex., for defendants.

**Norman R. TARVER and Christina Sparks**

v.

**FUNCTIONAL LIVING, INC., Anderson–Goodman, Inc., Dee Martin and Teresa Faller.**

**Civ. No. A–92–CA–052.**

United States District Court, W.D. Texas, Austin Division.

June 8, 1992.

As Amended July 7, 1992.

## ORDER

NOWLIN, District Judge.

Before the Court is the Defendants' Motion to Dismiss for Failure to State a Claim and Original Answer, filed February 18, 1992. Also before the Court is the Plaintiff's Motion for Leave to File Plaintiff's First Amended Original Complaint, and First Amended Original Complaint, which cures most of the defects indicated in the Defendants' Motion. Curiously, the Defendants' response to the Motion for Leave merely rehashes the arguments set forth in their Motion to Dismiss, and thus leaves the Court to itself to answer the question of why it should or should not allow the proposed amendments. Finding that justice will not be disserved by allowing said amendments, the Court grants the Plaintiffs leave to amend their complaint, and turns its full attention to the issues raised by the Motion to Dismiss and revisited sev-

eral times over in the various responses and replies before the Court.[1]

■ The only question for the Court's consideration at this time is whether Section 102(a) of the Civil Rights Act of 1991 (the "Act") applies retroactively, thereby potentially allowing the Plaintiffs to recover compensatory and punitive damages in the event they are successful on the merits. As to the Defendants' insistence that the Plaintiffs have failed to state claims upon which relief can be granted, the Court, in keeping with its policy of liberally viewing the sufficiency of complaints, finds that any defects in pleading have effectively been cured in the amended complaint by Plaintiffs (1) properly alleging violations of Title VII as to both Plaintiff Tarver and Plaintiff Sparks, claims which are not addressed by the Defendants' Motion to Dismiss other than as relates to the retroactivity issue; (2) adding a correctly pleaded Section 1981 claim; (3) properly describing a conspiracy between the two individual defendants, in direct contravention to the Defendants' claims that said conspiracy was improperly alleged as having been between the corporation and its employees; (4) alleging, as part of the aforementioned claim, a violation of specific fundamental rights of each Plaintiff, including First, Fourth, and Thirteenth Amendment rights, violations fully contemplated by Section 1985(3) despite the Defendants' misleading interpretation of the statute otherwise. *See Griffin v. Breckenridge*, 403 U.S. 88, 103, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971) (recognizing a cause of action for conspiracy to deprive a class of persons of their fundamental rights under the laws of the United States); and, finally (5) replacing the erroneously plead state cause of action under the Texas Whistleblower Act

with the correct statutory cause and claim for relief. As is often the case with a motion to dismiss, the Plaintiffs have used the Defendants' arguments to the Court as a roadmap toward creating a more stable complaint. When viewed in conjunction with the original complaint, the additions fully satisfy Rule 8(a)'s calling for "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R.Civ.P. 8(a).

With the Plaintiffs' claims surviving the Defendants' initial attack, the single question left open by the myriad of motions, responses, and replies already filed in this young case is whether the Plaintiffs are entitled to the specific relief afforded by Section 102(a) of the Act despite the occurrence of the events complained of prior to the enactment of that statute. The question is one of retroactivity, one which Congress apparently believed was better left to the efficiencies of the litigation process rather than the precise use of the English language. How else can one explain the confusing compromise of language yielding such a beautifully useless directive as the Court has before it today?[2] With guidance supplied in the form of "this Act and the amendments made by this Act shall take effect upon enactment," Civil Rights Act of 1991, Pub.L. No. 102–166 § 402(a) (1991), this Court can do little more than look upfield into the sun in an attempt to glean whether the Act is applicable to all cases, is to be applied only to those actions filed after the date of enactment, or should affect only those cases in which the injuries occurred after the date of enactment.

■ Given the complexities engendered by Congress' deceptively simple

---

1. The Court also notes that it has received a letter from Gary Allen Wiener, counsel for the Plaintiffs, requesting that no hearings be scheduled in this matter from June 29 through July 8, 1992, so that he and his soon-to-be wife can enjoy a cruise on their honeymoon. The Court congratulates Mr. Wiener on his marriage, and assures him that nothing will be scheduled in this case during that period.

2. It has been suggested by several courts that have attempted to answer this question that, in

fact, Congress purposefully used such vague language in order to get past a potential presidential veto, all the while believing the courts would apply the statute retroactively. *See, e.g., Fray v. Omaha World Herald Co.*, 960 F.2d 1370, 1380 (8th Cir.1992) (Heaney, J., dissenting). Such behavior on the part of Congress, while designed to subvert the safeguards of the separation of powers, should nonetheless lead a court to find that a retroactive application of the Act comports with the intention of its enactors.

guideline, as evidenced by the range of choices delineated above and the structure of the statute as a whole, it is little wonder that our leaders chose not to venture further into the land of retroactivity. As a general rule, statutes that affect substantive rights are presumed to be forward-looking, and thus do not apply retroactively. *See, e.g., Bennett v. New Jersey,* 470 U.S. 632, 638, 105 S.Ct. 1555, 1559, 84 L.Ed.2d 572 (1985). However, in applying procedures and remedies, it is generally accepted that a court is to look to the law at the time it renders a decision. *See, e.g., Bradley v. School Bd.,* 416 U.S. 696, 716–17, 94 S.Ct. 2006, 2018–19, 40 L.Ed.2d 476 (1974). The uniqueness of the Civil Rights Act of 1991 lies in its collective modifications of substantive, remedial, and procedural provisions, most of which are completely unrelated when juxtapositioned in light of the original laws. Were the new remedial and procedural provisions tagged as applicable solely to the newly enacted substantive law, the question of retroactivity would be left unfractured, leaving the Court simply to conclude whether or not the Act as a whole is to be applied to events occurring prior to its enactment. As it stands, and there is a tinge of agreement among the parties on this point, the statute is an amalgamation of both restorative and enhancement provisions, the principal thrust of which is to reverse several recent Supreme Court decisions that narrowed the rights of plaintiffs in employment discrimination cases.[3] The Act also breaks new ground by providing for compensatory and punitive damages, as well as jury trials, in cases involving intentional discrimination. Because of the varied characterizations of the changes that were made, every modification and addition to the prior law—whether substantive, remedial or procedural—presents an individual question of retroactive application to the Court. Fortunately, this Court need only consider the retroactive effect of the change allowing for a complaining party to "recover compensatory and punitive damages," language itself creating problems similar to those arising from the structure of the Act as a whole. Pub.L. No. 102–166, § 102(a) (1991).

The difficulty stems in the first instance from the lumping together of the terms "punitive" and "compensatory", a seemingly innocuous choice of style suggesting that these remedies are similar animals. But because punitive damages are by their very nature designed to punish the wrongdoers and deter those who might act similarly in the future, they are very different indeed from their compensatory cousin, whose main purpose it is to make an injured party whole again. Looking at the rules of construction propounded by *Bennett* and *Bradley,* it is quite possible to conclude that while compensatory damages may be offered retroactively in pending cases or in cases where the injuries occurred prior to the statute's enactment (ala *Bradley*), punitive damages are available only to causes of action arising after November 21, 1991 (ala *Bennett*).

Adding to the confusion presented by this uncomfortable dichotomy is the as yet unresolved conflict between the rule in *Bradley* and the Supreme Court's most recent pronouncements on the subject of retroactivity. The dilemma began with the Supreme Court's boldly stating that "[r]etroactivity is not favored in the law. Thus, Congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." *Bowen v. Georgetown University Hospital,* 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988). Understandably, many courts have had trouble reconciling this with the language of *Bradley,* which requires a court to apply a new statute retroactively "unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." *Bradley,* 416 U.S. at 711, 94 S.Ct. at 2016.

One would think that such a glaring inconsistency would not go unnoticed by the nation's highest court, and that surely there would be an opinion out there bril-

---

**3.** The Act states that its purpose is "to respond to recent decisions of the Supreme Court by expanding the scope of the relevant civil rights statutes." Pub.L. No. 102–106, § 3(4).

liantly reconciling these two diametrically opposed positions. But a thorough review of recent Supreme Court pronouncements finds only Justice Scalia's concurrence in *Kaiser Aluminum* recognizing the tension and arguing that *Bradley*'s presumption in favor of retroactivity should be overruled, a stirring body of prose that is of little utility to this Court given the fact that none of the Justice's colleagues on the High Court were inclined to agree with his reasoning on this critical point. *See Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990). Looking to the Fifth Circuit for guidance provides nothing further, as the circuit court has failed to articulate a decisive rule for determining if a statute is retroactive, opting instead to attempt to reconcile the cases on its own by reading *Bradley* as applicable only to cases that are "pending decision" at the time legislation is enacted, a standard leaving the Court with more uncertain language to decipher, and providing little, if any, guidance on the issue presented for decision. *See Walker v. U.S. Dept. of Housing and Urban Dev.*, 912 F.2d 819, 831 (5th Cir. 1990). Further scrambling the mix, the Fifth Circuit has asserted in the past that the "[r]etroactive application of a statute is appropriate when Congress enacts the statute to clarify the Supreme Court's interpretation of previous legislation, thereby returning the law to its previous posture." *Ayers v. Allain*, 893 F.2d 732, 754–55 (5th Cir.1990), *vacated on other grounds*, 914 F.2d 676 (5th Cir.1990); *see also Carlton v. BAWW, Inc.*, 751 F.2d 781, 787 (5th Cir. 1985). Given that the actions of the Supreme Court in the area of civil rights provided the spark that motivated Congress to revisit the existing laws in the first place, the Fifth Circuit precedent on the issue of retroactivity presented in the instant case leaves the Court still in search of the proverbial hook from which to hang its hat.

In an effort to complete the chase, a review of the decisions of the two circuit courts of appeal that have weighed in on the specific issue of retroactivity of the Act—both determining that the Act does not apply to conduct that occurred before its enactment—reveals only that neither court recognized the difference between substantive and procedural changes, nor were they considering the specific question of the retroactive application of the new damages provision currently facing this Court. *See Fray v. Omaha World Herald Co.*, 960 F.2d 1370 (8th Cir.1992); *Vogel v. Cincinnati*, 959 F.2d 594 (6th Cir.1992). Moreover, this Court sees little coherence in the Eighth Circuit's reliance on Congress' failure to override a presidential veto of a bill containing the retroactivity provision to conclude that "the legislative intent was surely that the new law would be prospective only," when in fact all this really shows is that, as has been the case with virtually every presidential veto of this administration, Congress cannot get two-thirds of its members to agree on anything. *See Fray*, at 1375–76. If anything, as eloquently noted by the dissent in *Fray*, Congress more likely acted purposefully in an attempt to assure passage of the Act, all the while assuming it would be applied retroactively by the courts. *See supra* note 2. Finally, as should be expected in any area where the available legal precedent strains the bounds of credible analysis, the numerous district courts that have considered the issue, including several in the Western District of Texas, have reached conflicting, and often incomplete, conclusions.[4]

Perhaps the only certainty in this case is that the Court is being called upon to develop a rule of law that will most assuredly be contradicted again and again by the various federal district and appellate courts that review it, until, and unless, the Supreme Court of the United States finally decides that the statute in question is more

---

**4.** The Court need look no further for evidence of the confusion engendered by the question of retroactivity than the seemingly endless string cites enlisted by each party in support of their polarized positions. See the Plaintiffs' Re-

sponse to Defendants' Motion to Dismiss for Failure to State a Claim at 5, n. 10 and the Defendants' Reply to Plaintiffs' Response at 6, n. 1.

*Bowen*–ish than *Bradley*–ish, or vice versa. So much for the efficiency of litigation! The Court, rather than rely on the unreliable mess masquerading as the law in this area, instead will dive headlong into the well of common law and common sense—that instinctive train of thought textbook litigators implore juries not to leave at the courthouse door—and derive a rule that will almost certainly leave the Court showered in praise by one side, barraged with insults from the other. (See "The Battle of the Trial Lawyers and the Business Interests," Now Showing at a Legislature Near You).

The confusion surrounding this issue arises in part from Congress' failure to address the question, and in part from the unsettled state of the law in this area. Nevertheless, there exists a glimmer of hope in the application of the time-weathered rules of statutory construction, chief among them the rule that a Court need only look to the statute itself if language therein will provide it a means to dispel the confusion over a particular employment of terms. More specifically, the Supreme Court has consistently expressed "a deep reluctance to interpret a statutory provision so as to render superfluous other provisions in the same enactment." *Freytag v. Commissioner,* —— U.S. ——, 111 S.Ct. 2631, 2638, 115 L.Ed.2d 764 (1991) (citing *Pennsylvania Dept. of Public Welfare v. Davenport,* 495 U.S. 552, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990)). Even *Bowen* instructs the Court that its presumption against retroactivity is inapplicable where the language of the statute requires a different result. *See Bowen,* 488 U.S. at 208, 109 S.Ct. at 471. Thus, rather than worry about what *Bowen* means for *Bradley,* the Court instead will first determine if the language used in the statute requires the retroactive application of the new damages provision, potentially allowing the Court to follow the mandate of *Bowen* without speculating on matters of precedential reconciliation better left to its peers.

Both the Plaintiffs and the Defendants make fine arguments as to how the statute provides an answer for the Court, each putting their own spin on the effect of those paragraphs in which Congress was good enough to say exactly what it meant regarding the statute's retroactive qualities. *See* Pub.L. No. 102–166, §§ 109(c), 402(b) (1991). It is the Plaintiffs' argument which moves the Court first, deftly pointing out that in the particular provisions where Congress did not want changes to be applied retroactively, Congress was able to express this desire quite unequivocally through the plain, precise use of the English language. *See id.* Conclusion—the entire statute must be retroactive, otherwise there would be no need to exclude specific sections from being applied to situations occurring prior to its enactment. But the Defendants counter strongly, arguing that Section 402(b) was inserted by the Senators from Alaska for the purpose of assuring no further litigation in the *Wards Cove* case, with all other disparate impact cases unaffected by the narrowly drawn section. A similar logic is applied to Section 109, which Defendants claim is directed solely to the extraterritorial application of Title VII and the Americans With Disabilities Act. Other than these two instances, assert the Defendants, the Act does not answer the question of whether it applies to cases pending on the date it takes effect, or whether the Act is simply a generous Congressional gift for those similarly situated individuals who were fortunate enough to be discriminated against after the effective date of the new amendments.

But it is precisely this point—that Congress did speak out to avoid the possibility of the statute being applied retroactively in those two situations, but left the rest of the statute to stand on its own—that leaves the Court firmly convinced that, while it may not have wanted to go on the record with it, Congress knew, and in reality intended, that this statute would be applied to injuries that occurred prior to the Act's effective date. Where such an intent is readily apparent, this Court firmly believes that there is no need to refer to staged legislative history, conflicting Supreme Court precedent, or politically driven presidential vetoes in order to uncover that which com-

mon sense begs the Court to otherwise expose.

In the end, it is the simple logic of the Plaintiffs which best defines the path to the Court's answer: "There is little precedent for, and certainly little logic in, construing the retroactivity of the Act to favor the wrongdoers and deny their victims the right to recover fair damages, simply because Congress neglected to speak *unequivocally* to the issue." Plaintiffs' Response to Defendants' Motion to Dismiss, at 11. The behavior of the wrongdoers is no different than it would have been under the previous law; the difference is that the Civil Rights Act of 1991 allows the Plaintiffs to be fully compensated for the damages they have suffered, while at the same time sending a clear message to those engaging in such conduct that society will no longer tolerate such behavior. Absent some clear reason for the Court to turn to the muddled principles of *Bowen* and *Bradley* or to attempt to resolve the questionable distinction between substantive and procedural law, and with public policy fully served by providing all who have been intentionally discriminated against with equal and complete relief, the Court believes justice will be served best by a rule applying the new and improved damages provision of the Civil Rights Act of 1991 to all those believing they have been wronged by the plague of discrimination, irregardless of the date on which the alleged actors chose to disclose their inbred ignorance.

ACCORDINGLY, IT IS ORDERED that the Defendants' Motion to Dismiss for Failure to State a Claim is hereby DENIED.

IT IS FURTHER ORDERED that the Plaintiffs' Motion for Leave to File Plaintiffs' First Amended Original Complaint is hereby GRANTED.